[No. 36.    Decided March 8, 1890.]

WESTERN MILL AND LUMBER COMPANY v. DUDLEY BLANCHARD AND GEORGE B. BLANCHARD.

SALE — DELIVERY — EVIDENCE — TIME OF PAYMENT — INTEREST.

Where, in an action for the price of certain logs, the place of delivery of the logs, by the terms of the contract, is in controversy, evidence that the agent making the contract had only a special and limited authority to contract for the purchase of the logs to be delivered at the mill is admissible, as a circumstance to be weighed in connection with the agent's testimony as to what the contract was.

Where, by the terms of a contract, payment was to be made within sixty days from the presentation to defendant at San Francisco of a draft drawn by its agent in this state, and there was no proof that the draft was ever issued, though payment was demanded of the agent several days after the contract was made, a judgment, including interest from a date sixty days after the making of the contract, was unauthorized.

*Appeal from District Court, Jefferson County.*

The facts are sufficiently stated in the opinion.

*Struve, Haines & McMicken,* for appellants.

Persons who contract on a subject-matter concerning which a known usage prevails, by implication incorporate it in their agreement, if nothing is said to the contrary. Parsons on Contracts (7th ed.), pp. 666–7; Wait's Actions and Defenses, vol. 1, p. 128; *Robinson v. United States,* 13 Wall. 363. A person who deals in a particular market must be taken to deal according to the known, general and uniform usage or custom of that market. *Bailey v. Bensley,* 87 Ill. 556; *Lonergan v. Stewart,* 55 Ill. 44. When authority is conferred upon an agent it carries with it the right to act according to the usual customs of the trade or business to which it relates. Wait's Actions and Defenses, vol. 1, p. 229. A person dealing with an agent in a manner contrary to the customs of trade or business in which the transaction occurs is put upon inquiry as to his authority, and chargeable with notice of its limited character. *Taliaferro v. Bank,* 71 Md. 200.

The question of the existence of a local or trade custom which is not of a character so general as to be a matter of common knowledge, and therefore a subject of judicial notice, is solely for the jury. Thompson on Trials, § 1058; *Chicago Packing Co. v. Tilton,* 87 Ill. 547. So also the extent of such custom, *Ibid.* Also whether the parties contracted with reference to it. Thompson on Trials, § 1058; *Burroughs v. Langley,* 10 Md. 248. Evidence of custom is admissible under the general denial. Abbott's Trial Evidence, p. 374. If a special agent exceeds his authority the principal is not bound by his acts. Story on Agency (6th ed.), §§ 126, 131, 132, and cases cited; Mechem on Agency, § 288. A person dealing with an agent, particularly when he is a stranger, must act with prudence and

diligence.  Mechem on Agency, §§ 290.  Any ratification of an unauthorized contract, in order to be made effectual[1] and obligatory upon the principal, must be shown to have been made with a full knowledge of all the material facts connected with the transaction to which it relates.  Mechem on Agency, § 120; *Owings v. Hall*, 9 Peters, 607; *Bell v. Cunningham*, 3 Peters, 69; *Besseau v. O'Brien*, 4 Biss. 395.

The logs were to be paid for in bills of exchange, payable in the city of San Francisco sixty days after presentation thereof for acceptance.  There should have been a rebate of interest during the stipulated period of credit. *Hanna v. Mills*, 21 Wend. 90.

*C. H. Hanford,* and *Eben Smith,* for appellee.

The court committed no error in excluding the evidence offered as to the alleged custom, because the alleged custom was not pleaded.  Particular local customs cannot be given in evidence upon the trial of a cause unless they are specially pleaded.  Lawson on Usages and Customs, p. 112.  *Wallace v. Morgan*, 23 Ind. 399; *Dutch, etc., Co. v. Mooney*, 12 Cal. 534.  No custom is valid which is contrary to law.  The offer made was to prove a custom to have all saw-logs scaled at the mill.  This is directly in conflict with a statute of the territory which expressly and in mandatory terms provides that all logs shall be scaled at the place where rafted.  Laws 1883, p. 107, §§ 2644 and 2645.  It is immaterial whether the agent of the appellant be called a general or a special agent.  He had authority to purchase these logs and to do whatever was fairly incident to that purchase.  1 Parsons on Contracts, 44; Story on Agency, pp. 148–9.  Persons dealing with an agent have a right to presume that his agency is general, and not limited, and notice of the limited authority must be brought to their knowledge before they are bound to regard it.  *Trainer v. Morrison*, 3 Atl. Rep. 185; 1 Parsons

Cont. 31, note; *Hatch v. Taylor*, 10 N. H. 538; *Railroad Co. v. Foster*, 104 Ind. 293; 54 Am. Rep. 319; Morawetz Corp. ¿ 593, and cases cited.

The opinion of the court was delivered by

SCOTT, J. — Appellees, who were plaintiffs below, brought suit to recover the contract price for certain saw-logs sold by them to appellant, which were lost while being towed from the place of purchase to the company's mill.   The controversy was as to which party assumed the risk of towage; whether, by the contract made, the logs were delivered at the place where purchased, or whether they were to have been delivered by appellees at the mill aforesaid. . The contract was made upon the part of appellant through one Villey, its special agent for that purpose. Upon the trial of the cause appellant offered testimony to prove that Villey only had a special and limited authority to contract for the purchase of the logs to be delivered at the mill.   Appellees objected to this testimony as immaterial. The court sustained the objection.   Villey had testified previous to the offer that in making the contract he told appellees that he could not purchase the logs to be scaled at the place where the bargain was made, and that it was contrary to the company's rule to scale logs away from the mill. He also testified that the logs were to be paid for according to the scale at the mill, by the terms of the agreement.

Appellees claimed that by the contract the logs were delivered at the place where the bargain was made, and that appellant assumed the risk of towage, and they contend here that their proof as to the place of delivery was not contradicted by the testimony upon the part of appellant. That appellant's proof of a scaling to be made at the mill by which the amount of the payment was to be determined is not inconsistent with the appellees' claim that the logs were delivered at the place where the bargain was made, and that thereby appellant assumed the risk of towage.

We think, however, that the evidence was fairly contradictory upon this point. The place of scaling, whereon the payment was to be based, seems to have been treated at the trial below as synonymous with the place of delivery, and if Villey's testimony was true, he substantially told appellees that he had no authority to buy the logs to be delivered at any other point than the mill. In this view of the case the proof offered by appellant that Villey as a matter of fact had no such authority was material, in that it was a circumstance to be weighed in connection with Villey's testimony as to what contract he actually did make, and the court should have admitted it.

It is also claimed by appellant that appellees recovered too large a sum. The contract was made December 7th, 1886, as alleged in the complaint. It is admitted that the agreement as to the time, place and manner of payment was that the appellant should pay for the logs at the city of San Francisco, where its principal place of business was located, sixty days after presentation to it there of a draft to be drawn by its agent at Port Hadlock upon it as drawee, and delivered to appellees immediately after delivery of the logs.

There is no proof that the draft was ever issued or demanded, but it appears that payment was demanded at Port Hadlock, December 10th, 1886. The cause was tried in March, 1889. The jury returned a verdict in favor of appellees for $4,230.87, " with legal interest." No time was specified in the verdict from which interest was to be allowed. Appellees claimed interest, in their complaint, from December 7th, 1886. The court rendered judgment upon the verdict for $4,230.87, " with legal interest thereon from and after the 6th day of February, 1887," and further added that the total sum for which judgment was rendered was $5,135.79.

In *Meeker v. Gardella, ante,* p. 139, decided at this session of the court, we held that a verdict similar to the one

in this case would not support a judgment for any sum, except by treating the interest clause as surplusage.

The only contention made by appellant here, however, is, that too large a sum was included in the judgment as interest; that by the terms of payment agreed upon no interest should have been charged for sixty days from and after the time necessary for presentation of the draft at San Francisco. In rendering the judgment sixty-one days were allowed from the date of the contract, and less than sixty days from the day payment was demanded at Port Hadlock, as the non-interest bearing time; and as it would necessarily have taken some days to have presented the draft at San Francisco, it is evident that not enough time was allowed, in any event, if there could have been any judgment at all on the verdict for accrued interest, and we are of the opinion that such a judgment was unauthorized.

For these reasons the judgment of the lower court is reversed, and the cause remanded.

ANDERS, C. J., and HOYT and STILES, JJ., concur.

DUNBAR, J., dissents.